UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION

In re:

MIGUEL FRANCISCO MARTIN and
ROSA ELENA MARTIN,

CASE NO: 20-23349-SMG
CHAPTER 13

_____Debtors._____/

## DEBTORS' EMERGENCY MOTION TO ALLOW SALE OF NON-HOMESTEAD REAL PROPERTY

COMES NOW, Miguel Francisco and Rosa Elena Martin ("Debtors"), by and through undersigned counsel, and files their Emergency Motion to Allow Sale of Non-Homestead Real Property, and states as follows:

1. The debtors entered into a contact to sell their non-homestead real property and the Closing on that property is to take place on October 21st, 2021. Due to the deadline for the cash sale of the non-homestead property, the debtors are requesting an emergency hearing to be held on or before October 11th, 2021 (see attached Exhibit "A").

2. The Debtors wish to sell their non-homestead property in order to liquidate this asset.

3. The debtors are paying 100% of unsecured creditors in their Chapter 13 Plane e and are willing to pay any excess towards their Chapter 13 Plan Payments.

4. The non-homestead real property of the debtors is commonly known as:

   **998 Hickory Nut Trail, Spencer, TN 38585**

5. The legal description of the Debtors non-homestead real property is known as:

   **Wpp Llc Mineral Tract 46-6 Home and 1.2 Acres**

   **059 720.00  Book 36, Page 715**

6. The Debtors understand that the approval of this Court does not waive the rights of nor does it extinguish the valid liens of any secured creditors and the Debtors still need the consent of the secured creditors to close on the Contract.

WHEREFORE, the Debtor, through undersigned counsel, prays this Court enter an Order Granting the Debtors Emergency Motion and allow the sale of their non-homestead real property.

## CERTIFICATE OF ADMISSION

I HEREBY CERTIFY that I am a member of the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was mailed via CM/ECF; Certified Return Requested; Facsimile, Electronic Court Mail and First Class U.S. Mail, this 29th day of September, 2021, to: **Regions Bank, N.A., Attn: John M. Turner, CEO,** 1900 Fifth Avenue North, Birmingham, AL 35203 **(CCR 7020 0090 0000 1537 0552); Regions Bank, N.A.,** PO Box 1860, Memphis, TN 38101   **Robin R. Weiner, Chapter 13 Trustee**, P.O. Box 559007, Ft. Lauderdale, FL 33355-9007; and to the **Miguel and Rosa Martin,** 17422 SW 21st Court, Miramar, FL 33029.

          Respectfully Submitted,

          Law Offices of the General Counsel, P.A.
          Attorney for Debtors
          6157 NW 167 Street, Suite F-21
          Miami, FL 33015
          Tel: 305-817-3677
          Fax: 305-675-0666
          Email: amontejo@andresmontejolaw.com

/s/  Andres Montejo
_____
Andres Montejo, Esq.
Florida Bar No.:  659428

Authentisign ID: F8D9E670-07B2-434E-B729-4B86ECF6E8D5



# ADDENDUM 1
## TO THE PURCHASE AND SALE AGREEMENT

1  Property Address: 998 Hickory Nut Trl                                                TN
2  Buyer: _____Kenneth Bell_____ & _____Tracy R Bell_____
3  Seller: _____Miguel F Martin_____

4  This ADDENDUM (hereinafter "Addendum"), between the undersigned Seller and Buyer is entered into and is effective as of
5  the Offer Date provided in the Purchase and Sale Agreement for the purpose of changing, deleting, supplementing or adding
6  terms to said Purchase and Sale Agreement. In consideration of mutual covenants herein and other good and valuable
7  consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows with an Effective Date
8  or Offer Date of _____09/23/2021_____:
9
10  $40,000 (forty thousand dollars) cash to be paid to sellers for all furniture, decorations,
11   pool table/games to remain excluding the items listed below:
12
13  Kitchen:  Utensils, dishes, pots and pans, coo coo clock.
14  Great Room: Dishes in china cabinet, large stuffed bear, Deer head, Blankets and
15             and ladder, Antler
16  Laundry:  Coffee machine, antique irons, Dog supplies
    Master:   picture frames, linens, small decorations.
17  Loft:  Hutch with games and baskets
18  Bedrooms:  Stuffed animals, Baby crib
19  Basement:  All items in pantry except refrigerator.
20             liquor, football paraphernalia, barrel table/chairs, Dominoes table and
21             game pieces, Jack Daniels planter and lamp, Bluetooth speaker,
22             Wood bench w/wheels, Deer head mount, guitars, coke cooler, popcorn
23             and gumball machines, board games and movies.

24  This Addendum is made a part of the Purchase and Sale Agreement as if quoted therein verbatim. Should the terms of this
25  Addendum conflict with the terms of the Purchase and Sale Agreement or other documents executed prior to or simultaneous
26  to the execution of this Addendum, the terms of this Addendum shall control, and the conflicting terms are hereby considered
27  deleted and expressly waived by both Seller and Buyer. In all other respects, the Purchase and Sale Agreement shall remain in
28  full force and effect.

29  The party(ies) below have signed and acknowledge receipt of a copy.
30  *KAB* | *Tracy R Bell*
31  BUYER 9/24/2021 7:31:45 AM CDT | BUYER 9/24/2021 8:18:23 AM CDT
32  _____ at _____ o'clock ☐ am/ ☐ pm | _____ at _____ o'clock ☐ am/ ☐ pm
33  Date | Date

34  The party(ies) below have signed and acknowledge receipt of a copy.
35  *Miguel F Martin*
36  SELLER 9/24/2021 10:44 PM CDT Martin | SELLER
37  _____ at _____ o'clock ☐ am/ ☐ pm | _____ at _____ o'clock ☐ am/ ☐ pm
38  Date | Date

NOTE: This form is provided by Tennessee REALTORS® to its members for their use in real estate transactions and is to be used as is. By downloading and/or using this form, you agree and covenant not to alter, amend, or edit said form or its contents except as where provided in the blank fields, and agree and acknowledge that any such alteration, amendment or edit of said form is done at your own risk. Use of the Tennessee REALTORS® logo in conjunction with any form other than standardized forms created by Tennessee REALTORS® is strictly prohibited. This form is subject to periodic revision and it is the responsibility of the member to use the most recent available form.

This form is copyrighted and may only be used in real estate transactions in which __Melissa Harmon__ is involved as a Tennessee REALTORS® authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615-321-1477.

 TENNESSEE REALTORS®    Copyright 2009 © Tennessee Association of Realtors®    Version 01/01/2021
RF 621 – Addendum to the Purchase and Sale Agreement, Page 1 of 1

Exhibit "A"



AuthentiSign ID: F8D9E670-07B2-434E-B729-4B86ECF6E8D5



# PURCHASE AND SALE AGREEMENT

1. **Purchase and Sale.** For and in consideration of the mutual covenants herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned buyer _____Kenneth Bell_____ & _____Tracy R Bell_____ ("Buyer") agrees to buy and the undersigned seller _____Miguel F Martin_____ ("Seller") agrees to sell all that tract or parcel of land, with such improvements as are located thereon, described as follows:
All that tract of land known as: __998 Hickory Nut Trl__
(Address) __Spencer__ (City), Tennessee, __38585__ (Zip), as recorded in __Van Buren__ County Register of Deeds Office, __36__ deed book(s), __715__ page(s), and/or __059 720.00__ instrument number and as further described as:
__Wpp Llc Mineral Tract 46-6 D   Home and 1.2 Acres__ together with all fixtures, landscaping, improvements, and appurtenances, all being hereinafter collectively referred to as the "Property."

   A. **INCLUDED** as part of the Property (if present): all attached light fixtures and bulbs including ceiling fans; permanently attached plate glass mirrors; heating, cooling, and plumbing fixtures and equipment; all doors, storm doors and windows; all window treatments (e.g., shutters, blinds, shades, curtains, draperies) and hardware; all wall-to-wall carpet; range; all built-in kitchen appliances; all bathroom fixtures and bathroom mirrors; all gas logs, fireplace doors and attached screens; all security system components and controls; garage door opener(s) and all (at least __1__) remote controls; swimming pool and its equipment; awnings; permanently installed outdoor cooking grills; all landscaping and all outdoor lighting; mailbox(es); attached basketball goals and backboards; TV mounting brackets (inclusive of wall mount and TV brackets) but excluding flat screen TVs); antennae and satellite dishes (excluding components); central vacuum systems and attachments; and all available keys, key fobs, access codes, master codes or other methods necessary for access to the Property, including mailboxes and/or amenities.

   B. Other items that **REMAIN** with the Property at no additional cost to Buyer:
Gas Range/oven, 2 refrigerators, washer, dryer, dishwasher, microwave, propane tank

   C. Items that **WILL NOT REMAIN** with the Property:

   D. **LEASED ITEMS:** Leased items that remain with the Property: (e.g., security systems, water softener systems, fuel tank, etc.): _____.
   Buyer shall assume any and all lease payments as of Closing. If leases are not assumable, the balance shall be paid in full by Seller at or before Closing.
   ☐ Buyer does not wish to assume a leased item. **(THIS BOX MUST BE CHECKED IN ORDER FOR IT TO BE A PART OF THIS AGREEMENT.)**
   Buyer does not wish to assume Seller's current lease of _____;
   therefore, Seller shall have said lease cancelled and leased items removed from Property prior to Closing.

   E. **FUEL:** Fuel, if any, will be adjusted and charged to Buyer and credited to Seller at Closing at current market prices.

2. **Purchase Price, Method of Payment and Closing Expenses.** Buyer warrants that, except as may be otherwise provided herein, Buyer will at Closing have sufficient cash to complete the purchase of the Property under the terms of this Purchase and Sale Agreement (hereinafter "Agreement"). The purchase price to be paid is: $ __805,000.00__, __Eight Hundred Five Thousand__ U.S. Dollars, ("Purchase Price") which shall be disbursed to Seller or Seller's Closing Agency by one of the following methods:
   i. a Federal Reserve Bank wire transfer;
   ii. a Cashier's Check issued by a financial institution as defined in 12 CFR § 229.2(i); OR
   iii. other such form as is approved in writing by Seller.

   A. **Financial Contingency – Loan(s) To Be Obtained.** This Agreement is conditioned upon Buyer's ability to obtain a loan(s) in the principal amount up to _____% of the Purchase Price listed above to be secured by a deed of trust on the Property. "Ability to obtain" as used herein means that Buyer is qualified to receive the loan described herein based upon Lender's customary and standard underwriting criteria. In consideration of Buyer, having acted in good

This form is copyrighted and may only be used in real estate transactions in which __Melissa Harmon__ is involved as a Tennessee REALTORS® authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615-321-1477.

TENNESSEE REALTORS  Copyright 2015 © Tennessee Association of Realtors®   Version 01/01/2021
RF401 – Purchase and Sale Agreement, Page 1 of 10



Authentisign ID: F8D9E670-07B2-434E-B729-4B86ECF6E8D5

```
49   faith and in accordance with the terms below, being unable to obtain financing by the Closing Date, the sufficiency of
50   such consideration being hereby acknowledged, Buyer may terminate this Agreement by providing written notice via
51   the Notification form or equivalent written notice. Seller shall have the right to request any supporting documentation
52   regarding loan denial. Upon termination, Buyer is entitled to a refund of the Earnest Money/Trust Money. Lender is
53   defined herein as the financial institution funding the loan.
54   The loan shall be of the type selected below (Select the appropriate boxes. Unselected items will not be part of
55   this Agreement):
56     ☐ Conventional Loan              ☐ FHA Loan; attach addendum
57     ☐ VA Loan; attach addendum       ☐ Rural Development/USDA
58     ☐ THDA                           ☐ Other  cash
```

59 Buyer may apply for a loan with different terms and conditions and also Close the transaction provided all other terms
60 and conditions of this Agreement are fulfilled, and the new loan does not increase any costs charged to Seller. Buyer
61 shall be obligated to Close this transaction if Buyer has the ability to obtain a loan with terms as described herein
62 and/or any other loan for which Buyer has applied and been approved.

63 **Loan Obligations:** *The Buyer agrees and/or certifies as follows:*
64 (1) Within three (3) days after the Binding Agreement Date, Buyer shall make application for the loan and shall
65 pay for credit report. Buyer shall immediately notify Seller or Seller's representative of having applied for
66 the loan and provide Lender's name and contact information, and that Buyer has instructed Lender to order
67 credit report. Such certifications shall be made via the Notification form or equivalent written notice;
68 (2) Within fourteen (14) days after the Binding Agreement Date, Buyer shall warrant and represent to Seller via
69 the Notification form or equivalent written notice that:
70 a. Buyer has secured evidence of hazard insurance which will be effective at Closing and Buyer shall
71 notify Seller of the name of the hazard insurance company;
72 b. Buyer has notified Lender of an Intent to Proceed and has available funds to Close per the signed
73 Loan Estimate; and
74 c. Buyer has requested that the appraisal be ordered and affirms that the appraisal fee has been paid.
75 (3) Buyer shall pursue qualification for and approval of the loan diligently and in good faith;
76 (4) Buyer shall continually and immediately provide requested documentation to Lender and/or loan originator;
77 (5) Unless otherwise stated in this Agreement, Buyer represents that this loan is not contingent upon the lease or
78 sale of any other real property and the same shall not be used as the basis for loan denial; and
79 (6) Buyer shall not intentionally make any material changes in Buyer's financial condition which would
80 adversely affect Buyer's ability to obtain the Primary Loan or any other loan referenced herein.
81 Should Buyer fail to timely comply with section 2.A.(1) and/or 2.A.(2) above **and provide notice as required**, Seller
82 may make written demand for compliance via the Notification form or equivalent written notice. If Buyer does not
83 furnish Seller the requested documentation within two (2) days after such demand for compliance, Buyer shall be
84 considered in default and Seller's obligation to sell is terminated.

85 ☒ **B.** **Financing Contingency Waived (THIS BOX MUST BE CHECKED TO BE PART OF THIS AGREEMENT.)**
86 (e.g. "All Cash", etc.): Buyer's obligation to close shall not be subject to any financial contingency. Buyer reserves
87 the right to obtain a loan. Buyer will furnish proof of available funds to close in the following manner:
88 _____bank letter_____ (e.g. bank statement, Lender's commitment letter) within five (5) days
89 after Binding Agreement Date. Should Buyer fail to do so, Seller may make written demand for compliance via the
90 Notification form or equivalent written notice. If Buyer does not furnish Seller with the requested notice within two
91 (2) days after such demand for compliance, Buyer shall be considered in default and Seller's obligation to sell is
92 terminated. Failure to Close due to lack of funds shall be considered default by Buyer.

93 In the event this Agreement is contingent upon an appraisal (See Section 2.C. below), Buyer must order the appraisal
94 and provide Seller with the name and telephone number of the appraisal company and proof that appraisal was ordered
95 within five (5) days of the Binding Agreement Date. Should Buyer fail to do so, Seller may make written demand for
96 compliance via the Notification form or equivalent written notice. If Buyer does not furnish Seller with the requested
97 notice within two (2) days after such demand for compliance, Buyer shall be considered in default and Seller's
98 obligation to sell is terminated.

99 **C.** **Appraisal (Select either 1 or 2 below. The sections not checked are not a part of this Agreement).**
100 ☒ 1. This Agreement **IS NOT** contingent upon the appraised value either equaling or exceeding the agreed upon
101 Purchase Price.

This form is copyrighted and may only be used in real estate transactions in which __Melissa Harmon__ is involved as a Tennessee REALTORS® authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615-321-1477.

TENNESSEE REALTORS    Copyright 2015 © Tennessee Association of Realtors®    Version 01/01/2021
RF401 – Purchase and Sale Agreement, Page 2 of 10



AuthentiSign ID: F8D9E670-07B2-434E-B729-4B86ECF6E8D5

☐ 2. This Agreement **IS CONTINGENT** upon the appraised value either equaling or exceeding the agreed upon Purchase Price. If the appraised value is equal to or exceeds Purchase Price, this contingency is satisfied. In consideration of Buyer having conducted an appraisal, the sufficiency of such consideration being hereby acknowledged, if the appraised value of the Property does not equal or exceed the Purchase Price, Buyer shall promptly notify the Seller via the Notification form or equivalent written notice. Buyer shall then have three (3) days to either:
1. waive the appraisal contingency via the Notification form or equivalent written notice **OR**
2. terminate the agreement by giving notice to seller via the Notification form or equivalent written notice. Upon timely termination, Buyer is entitled to a refund of the Earnest money.

In the event Buyer fails to either waive the appraisal contingency or terminate the agreement as set forth above, this contingency shall be deemed satisfied. Thereafter, failure to appraise shall not be used as the basis for loan denial or termination of contract. Seller shall have the right to request any supporting documentation showing appraised value did not equal or exceed the agreed upon purchase price.

**D. Closing Expenses.**
1. **Seller Expenses.** Seller shall pay all existing loans and/or liens affecting the Property, including all penalties, release preparation costs, and applicable recording costs; any accrued and/or outstanding association dues or fees; fee (if any) to obtain lien payoff/estoppel letters/statement of accounts from any and all associations, property management companies, mortgage holders or other liens affecting the Property; Seller's closing fee, document preparation fee and/or attorney's fees; fee for preparation of deed; notary fee on deed; and financial institution (Bank, Credit Union, etc.) wire transfer fee or commercial courier service fee related to the disbursement of any lien payoff(s). Seller additionally agrees to permit any withholdings and/or to pay any additional sum due as is required under the Foreign Investment in Real Property Tax Act. Failure to do so will constitute a default by Seller.

**In the event Seller is subject to Tax Withholding as required by the Foreign Investment in Real Property Tax Act, (hereinafter "FIRPTA"), Seller additionally agrees that such Tax Withholding must be collected from Seller by Buyer's Closing Agent at the time of Closing.** In the event Seller is not subject to FIRPTA, Seller shall be required as a condition of Closing to sign appropriate affidavits certifying that Seller is not subject to FIRPTA. *It is Seller's responsibility to seek independent tax advice or counsel prior to the Closing Date regarding such tax matters.*

2. **Buyer Expenses.** Buyer shall pay all transfer taxes and recording fees on deed of conveyance and deed of trust; Buyer's closing fee, document preparation fee and/or attorney's fees; preparation of note, deed of trust, and other loan documents; mortgage loan inspection or boundary line survey; credit report; required premiums for private mortgage, hazard and flood insurance; required reserved deposits for insurance premiums and taxes; prepaid interest; re-inspection fees pursuant to appraisal; insured Closing Protection Letter; association fees as stated within section 4.F.; and any costs incident to obtaining and closing a loan, including but not limited to: appraisal, origination, discount points, application, commitment, underwriting, document review, courier, assignment, photo, tax service, notary fees, and any wire fee or other charge imposed for the disbursement of the Seller's proceeds according to the terms of this Agreement.

3. **Title Expenses.** Cost of title search, mortgagee's policy and owner's policy (rates to be as filed with the Tennessee Department of Commerce and Insurance) shall be paid as follows:
_____Buyer to pay title expenses_____.
Simultaneous issue rates shall apply.

**Not all of the above items (Seller Expenses, Buyer Expenses and Title Expenses) are applicable to every transaction and may be modified as follows:**
Buyer to pay customary Buyer closing costs
Seller to pay customary Seller closing costs
**Closing Agency for Buyer & Contact Information:** Jack Franklin Attorney
10 Bockman Way Sparta 38583
**Closing Agency for Seller & Contact Information:** Jack Franklin Attorney

3. **Earnest Money/Trust Money.** Buyer has paid or will pay within ___6___ days after the Binding Agreement Date to _____ReMax Finest_____ (name of Holder) ("Holder") located at _____24 Oak Rd Crossville Tn 38555_____ (address of Holder), a Earnest Money/Trust Money deposit of $___5,000.00___ by check (OR
_____) ("Earnest Money/Trust Money").

This form is copyrighted and may only be used in real estate transactions in which ___Melissa Harmon___ is involved as a Tennessee REALTORS® authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615-321-1477.

**TENNESSEE REALTORS** | Copyright 2015 © Tennessee Association of Realtors® | Version 01/01/2021
RF401 – Purchase and Sale Agreement, Page 3 of 10


TRANSACTIONS
TransactionDesk Edition

AuthentIsign ID: F8D9E670-07B2-434E-B729-4B86ECF6E8D5

158    A. **Failure to Receive Earnest Money/Trust Money.** In the event Earnest Money/Trust Money (if applicable) is not timely received by Holder or Earnest Money/Trust Money check or other instrument is not honored for any reason by the bank upon which it is drawn, Holder shall promptly notify Buyer and Seller of the Buyer's failure to deposit the agreed upon Earnest Money/Trust Money. Buyer shall then have one (1) day to deliver Earnest Money/Trust Money in immediately available funds to Holder. In the event Buyer does not deliver such funds, Buyer is in default and Seller shall have the right to terminate this Agreement by delivering to Buyer or Buyer's representative written notice via the Notification form or equivalent written notice. In the event Buyer delivers the Earnest Money/Trust Money in immediately available funds to Holder before Seller elects to terminate, Seller shall be deemed to have waived his right to terminate, and the Agreement shall remain in full force and effect.

167    B. **Handling of Earnest Money/Trust Money upon Receipt by Holder.** Earnest Money/Trust Money (if applicable) is to be deposited promptly after the Binding Agreement Date or the agreed upon delivery date in this Earnest Money/Trust Money section or as specified in the Special Stipulations section contained herein. Holder shall disburse Earnest Money/Trust Money only as follows:

    (a) at Closing to be applied as a credit toward Buyer's Purchase Price;
    (b) upon a written agreement signed by all parties having an interest in the funds;
    (c) upon order of a court or arbitrator having jurisdiction over any dispute involving the Earnest Money/Trust Money;
    (d) upon a reasonable interpretation of the Agreement; or
    (e) upon the filing of an interpleader action with payment to be made to the clerk of the court having jurisdiction over the matter.

Holder shall be reimbursed for, and may deduct from any funds interpleaded, its costs and expenses, including reasonable attorney's fees. The prevailing party in the interpleader action shall be entitled to collect from the other party the costs and expenses reimbursed to Holder. No party shall seek damages from Holder (nor shall Holder be liable for the same) for any matter arising out of or related to the performance of Holder's duties under this Earnest Money/Trust Money section. Earnest Money/Trust Money shall not be disbursed prior to fourteen (14) days after deposit unless written evidence of clearance by bank is provided.

184   4. **Closing, Prorations, Special Assessments and Warranties Transfer.**

185    A. **Closing Date.** This transaction shall be closed ("Closed") (evidenced by delivery of warranty deed and payment of Purchase Price, the "Closing"), and this Agreement shall expire, at 11:59 p.m. local time on the __21st__ day of __October__, __2021__ ("Closing Date"), or on such earlier date as may be agreed to by the parties in writing. Such expiration does not extinguish a party's right to pursue remedies in the event of default. Any extension of this date must be agreed to by the parties in writing via the Closing Date/Possession Date Amendment or equivalent written agreement.

     1. **Possession.** Possession of the Property is to be given (**Select the appropriate boxes below. Unselected items will not be part of this Agreement**):
       ☒ at Closing as evidenced by delivery of warranty deed and payment of Purchase Price;
     **OR**
       ☐ as agreed in the attached and incorporated Temporary Occupancy Agreement;

196    B. **Prorations.** Real estate taxes, rents, dues, maintenance fees, and association fees on said Property for the calendar year in which the sale is Closed shall be prorated as of the Closing Date. In the event of a change or reassessment of taxes for the calendar year after Closing, the parties agree to pay their recalculated share. Real estate taxes, rents, dues, maintenance fees, and association fees for prior years and roll back taxes, if any, will be paid by Seller.

200    C. **Greenbelt.** If property is currently classified by the property tax assessor as "Greenbelt" (minimum of 15 acres or otherwise qualifies), does the Buyer intend to keep the property in the Greenbelt? (**Select the appropriate boxes below. Unselected items will not be part of this Agreement**):
     ☐ Buyer intends to maintain the property's Greenbelt classification and acknowledges that it is Buyer's responsibility to make timely and proper application to insure such status. Buyer's failure to timely and properly make application will result in the assessment of rollback taxes for which Buyer shall be obligated to pay. Buyer should consult the tax assessor for the county where the property is located prior to making this offer to verify that their intended use will qualify for greenbelt classification.
     ☐ Buyer does not intend to maintain the property's Greenbelt status and Rollback taxes shall be payable by the Seller at time of closing.

210    D. **Special Assessments.** Special assessments approved or levied prior to the Closing Date shall be paid by the Seller at or prior to Closing unless otherwise agreed as follows: _____.

This form is copyrighted and may only be used in real estate transactions in which __Melissa Harmon__ is involved as a Tennessee REALTORS® authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615-321-1477.

TENNESSEE REALTORS    Copyright 2015 © Tennessee Association of Realtors®    Version 01/01/2021
RF401 – Purchase and Sale Agreement, Page 4 of 10

TRANSACTIONS TransactionDesk Edition

AuthentIsign ID: F8D9E670-07B2-434E-B729-4B86ECF6E8D5

213     E. **Warranties Transfer.** Seller, at the option of Buyer and at Buyer's cost, agrees to transfer Seller's interest in any
214     manufacturer's warranties, service contracts, termite bond or treatment guarantee and/or similar warranties which by
215     their terms may be transferable to Buyer.
216     F. **Association Fees.** Buyer shall be responsible for all homeowner or condominium association transfer fees, related
217     administration fees (not including statement of accounts), capital expenditures/contributions incurred due to the
218     transfer of Property and/or like expenses which are required by the association, property management company and/or
219     the bylaws, declarations or covenants for the Property (unless otherwise specifically addressed herein and/or unless
220     specifically chargeable to Seller under applicable bylaws, declarations, and/or neighborhood covenants).

221 **5. Title and Conveyance.**
222   A. Seller warrants that at the time of Closing, Seller will convey or cause to be conveyed to Buyer or Buyer's assign(s)
223     good and marketable title to said Property by general warranty deed, subject only to:
224       (1) zoning;
225       (2) setback requirements and general utility, sewer, and drainage easements of record on the Binding Agreement
226         Date upon which the improvements do not encroach;
227       (3) subdivision and/or condominium declarations, covenants, restrictions, and easements of record on the
228         Binding Agreement Date; and
229       (4) leases and other encumbrances specified in this Agreement.
230     If title examination, closing or loan survey pursuant to Tenn. Code Ann. § 62-18-126, boundary line survey, or other
231     information discloses material defects, Buyer may, at Buyer's discretion:
232       (1) accept the Property with the defects **OR**
233       (2) require Seller to remedy such defects prior to the Closing Date. Buyer shall provide Seller with written notice
234         of such defects via the Notification form or equivalent written notice. If defects are not remedied prior to
235         Closing Date, Buyer and Seller may elect to extend the Closing Date by mutual written agreement evidenced
236         by the Closing Date/Possession Amendment form or other written equivalent. If defects are not remedied by
237         the Closing Date or any mutually agreed upon extension thereof, this Agreement shall terminate, and Buyer
238         shall be entitled to refund of Earnest Money/Trust Money.
239     Good and marketable title as used herein shall mean title which a title insurance company licensed to do business in
240     Tennessee will insure at its regular rates, subject only to standard exceptions. The title search or abstract used for the
241     purpose of evidencing good and marketable title must be acceptable to the title insurance agent and the issuing title
242     insurance company. Seller agrees to execute such appropriate affidavits and instruments as may be required by the
243     issuing title insurance company.
244   B. **Deed.** Name(s) on Deed to be: _____ Kenneth Bell and Tracy R Bell _____
245     It is the Buyer's responsibility to consult the closing agency or attorney prior to Closing as to the manner in which
246     Buyer holds title.
247   C. **Association Lien Payoff.** In the event the Property is subject to mandatory association assessments or other fees,
248     which may impose a lien, Seller shall cause to be delivered to Buyer or Buyer's Closing Agent not later than seven
249     (7) days before Closing a lien payoff, estoppel letter or a statement of account reflecting that the account relating to
250     the Property is current or setting forth the sum due to bring the account current.

251 **6. Lead-Based Paint Disclosure (Select the appropriate box.)**
252     ☒ does not apply.    ☐ does apply (Property built prior to 1978 – see attached Lead-Based Paint Disclosure)

253 **7. Inspections.**
254   A. **Buyer's Right to Make Inspection(s). All inspections/reports, including but not limited to the home inspection
255     report, those required/recommended in the home inspection report, Wood Destroying Insect Infestation
256     Inspection Report, septic inspection and well water test, are to be made at Buyer's expense, unless otherwise
257     stipulated in this Agreement.** The parties hereto agree that in the event Buyer shall elect to contract with a third-
258     party inspector to obtain a "Home Inspection" as defined by Tennessee law, said inspection shall be conducted by a
259     licensed Home Inspector. However, nothing in this section shall preclude Buyer from conducting any inspections on
260     his/her own behalf, nor shall it preclude Buyer from retaining a qualified (and if required by law, licensed) professional
261     to conduct inspections of particular systems or issues within such professional's expertise or licensure, including but
262     not limited to inspection of the heating/cooling systems, electrical systems, foundation, etc., so long as said
263     professional is not in violation of Tenn. Code Ann. § 62-6-301, et seq. as may be amended. **Seller shall cause all
264     utility services and any pool, spa, and similar items to be operational so that Buyer may complete all inspections
265     and tests under this Agreement.** Buyer agrees to indemnify Seller from the acts of himself, his inspectors and/or
266     representatives in exercising his rights under this Purchase and Sale Agreement. Buyer's obligations to indemnify
267     Seller shall also survive the termination of this Agreement by either party, which shall remain enforceable.

This form is copyrighted and may only be used in real estate transactions in which ___Melissa Harmon___ is involved as a Tennessee REALTORS® authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615-321-1477.


TENNESSEE REALTORS  Copyright 2015 © Tennessee Association of Realtors®
RF401 – Purchase and Sale Agreement, Page 5 of 10

Version 01/01/2021


TRANSACTIONS
TransactionDesk Edition

AuthentIsign ID: F8D9E670-07B2-434E-B729-4B86ECF6E8D5

**Buyer waives any objections to matters of purely cosmetic nature (e.g. decorative, color or finish items) disclosed by inspection. Buyer has no right to require repairs or alterations purely to meet current building codes, unless required to do so by governmental authorities.**

B. **Initial Inspections.** Buyer and/or his inspectors/representatives shall have the right and responsibility to enter the Property during normal business hours, for the purpose of making inspections and/or tests of the Property. Buyer and/or his inspectors/representatives shall have the right to perform a visual analysis of the condition of the Property, any reasonably accessible installed components, the operation of the Property's systems, including any controls normally operated by Seller including the following components: heating systems, cooling systems, electrical systems, plumbing systems, structural components, foundations, roof coverings, exterior and interior components, any other site aspects that affect the Property, and environmental issues (e.g. radon, mold, asbestos, etc.).

C. **Wood Destroying Insect Infestation Inspection Report.** If desired by Buyer or required by Buyer's Lender, it shall be Buyer's responsibility to obtain *at Buyer's expense* a Wood Destroying Insect Infestation Inspection Report (the "Report"), which shall be made by a Tennessee licensed and chartered pest control operator.
**The foregoing expense may be subject to governmental guidelines relating to VA Loans (See VA/FHA Loan Addendum if applicable).**
The inspection shall include each dwelling, garage, and other permanent structure on the Property excluding _____ for evidence of active infestation and/or damage.
Buyer shall cause such Report to be delivered to Seller simultaneously with any repairs requested by the Buyer or the end of the Inspection Period, whichever is earlier. If the Report indicates evidence of active infestation, Seller agrees to treat infestation at Seller's expense and provide documentation of the treatment to Buyer prior to Closing. Requests for repair of damage, if any, should be addressed in the Buyer's request for repairs pursuant to Subsection 7.D., Buyer's Inspection and Resolution below.

D. **Buyer's Inspection and Resolution.** Within __12__ days after the Binding Agreement Date ("Inspection Period"), Buyer shall cause to be conducted any inspection provided for herein, including but not limited to the Wood Destroying Insect Infestation Inspection Report AND shall provide written notice of such to Seller as described below. *In the event Buyer fails to timely make such inspections and respond within said timeframe as described herein, the Buyer shall have forfeited any rights provided under this Section 7, and in such case shall accept the Property in its current condition, normal wear and tear excepted.*

**In said notice Buyer shall either:**
(1) In consideration of Buyer having conducted Buyer's good faith inspections as provided for herein, the sufficiency of such consideration being hereby acknowledged, Buyer shall furnish Seller with a list of written specified objections and immediately terminate this Agreement via the Notification form or equivalent written notice. All Earnest Money/Trust Money shall be returned to Buyer upon termination.
**OR**
(2) accept the Property in its present "AS IS" condition with any and all faults and no warranties expressed or implied via the Notification form or equivalent written notice. Seller has no obligation to make repairs.
**OR**
(3) furnish Seller a written list of items which Buyer requires to be repaired and/or replaced with like quality or value in a professional and workmanlike manner via the Repair/Replacement Proposal or equivalent written notice. Seller shall have the right to request any supporting documentation that substantiates any item listed.
   a. Resolution Period. Seller and Buyer shall then have a period of __3__ days following receipt of the above stated written list ("Resolution Period") to reach a mutual agreement as to the items to be repaired or replaced with like quality or value by Seller, which shall be evidenced by the Repair / Replacement Amendment or written equivalent(s). The receipt by Seller of the above stated written list or Repair/Replacement Proposal marks the end of the Inspection Period and beginning of the Resolution Period. *The parties agree to negotiate repairs in good faith during the Resolution Period.* In the event Seller and Buyer do not reach a mutual written resolution during such Resolution Period or a mutually agreeable written extension thereof as evidenced in an Amendment to this Agreement signed by both parties within said period of time, this Agreement is hereby terminated. If terminated, Buyer is entitled to a refund of the Earnest Money/Trust Money.

☐ E. **Waiver of All Inspections. THIS BOX MUST BE CHECKED TO BE PART OF THIS AGREEMENT.** Buyer, having been advised of the benefits of inspections, waives any and all Inspection Rights under this Section 7 (including but not limited to the Wood Destroying Insect Infestation Inspection Report).

8. **Final Inspection.** Buyer and/or his inspectors/representatives shall have the right to conduct a final inspection of Property on the Closing Date or within __2__ day(s) prior to the Closing Date only to confirm Property is in the same or better

This form is copyrighted and may only be used in real estate transactions in which __Melissa Harmon__ is involved as a Tennessee REALTORS® authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615-321-1477.

TENNESSEE REALTORS  Copyright 2015 © Tennessee Association of Realtors®  
RF401 – Purchase and Sale Agreement, Page 6 of 10  
Version 01/01/2021

TRANSACTIONS TransactionDesk Edition

AuthentIsign ID: F8D9E670-07B2-434E-B729-4B86ECF6E8D5

condition as it was on the Binding Agreement Date, normal wear and tear excepted, and to determine that all repairs/replacements agreed to during the Resolution Period, if any, have been completed. Property shall remain in such condition until Closing at Seller's expense. Closing of this sale constitutes acceptance of Property in its condition as of the time of Closing, unless otherwise noted in writing.

9. **Buyer's Additional Due Diligence Options.** If any of the matters below are of concern to Buyer, Buyer should address the concern by specific contingency in the Special Stipulations Section of this Agreement.

   A. **Survey and Flood Certification.** Survey Work and Flood Certifications are the best means of identifying boundary lines and/or encroachments and easements or flood zone classifications. Buyer may obtain a Mortgage Inspection or Boundary Line Survey and Flood Zone Certifications.

   B. **Insurability.** Many different issues can affect the insurability and the rates of insurance for property. These include factors such as changes in the Flood Zone Certifications, changes to the earthquake zones maps, the insurability of the buyer, and previous claims made on the Property. It is the right and responsibility of Buyer to determine the insurability, coverage and the cost of insuring the Property. It is also the responsibility of Buyer to determine whether any exclusions will apply to the insurability of said Property.

   C. **Water Supply.** The system may or may not meet state and local requirements. It is the right and responsibility of Buyer to determine the compliance of the system with state and local requirements. [For additional information on this subject, request the "Water Supply and Waste Disposal Notification" form.]

   D. **Waste Disposal.** The system may or may not meet state and local requirements. It is the right and responsibility of Buyer to determine the compliance of the system with state and local requirements. In addition, Buyer may, for a fee, obtain a septic system inspection letter from the Tennessee Department of Environment and Conservation, Division of Ground Water Protection. [For additional information on this subject, request the "Water Supply and Waste Disposal Notification" form.]

   E. **Title Exceptions.** At Closing, the general warranty deed will be subject to subdivision and/or condominium declarations, covenants, restrictions and easements of record, which may impose obligations and may limit the use of the Property by Buyer.

10. **Disclaimer.** It is understood and agreed that the real estate firms and real estate licensee(s) representing or assisting Seller and/or Buyer and their brokers (collectively referred to as "Brokers") are not parties to this Agreement and do not have or assume liability for the performance or nonperformance of Seller or Buyer. Buyer and Seller agree that Brokers shall not be responsible for any of the following, including but not limited to, those matters which could have been revealed through a survey, flood certification, title search or inspection of the Property; the insurability of the Property or cost to insure the Property; for the condition of the Property, any portion thereof, or any item therein; for any geological issues present on the Property; for any issues arising out of the failure to physically inspect Property prior to entering into this Agreement and/or Closing; for the necessity or cost of any repairs to the Property; for hazardous or toxic materials; for the tax or legal consequences of this transaction; for the availability, capability, and/or cost of utility, sewer, septic, or community amenities; for any proposed or pending condemnation actions involving Property; for applicable boundaries of school districts or other school information; for the appraised or future value of the Property; for square footage or acreage of the Property; for any condition(s) existing off the Property which may affect the Property; for the terms, conditions, and availability of financing; and/or for the uses and zoning of the Property whether permitted or proposed. Buyer and Seller acknowledge that Brokers are not experts with respect to the above matters and that they have not relied upon any advice, representations or statements of Brokers (including their firms and affiliated licensees) and waive and shall not assert any claims against Brokers (including their firms and affiliated licensees) involving same. Buyer and Seller understand that it has been strongly recommended that if any of these or any other matters concerning the Property are of concern to them, that they secure the services of appropriately credentialed experts and professionals of Buyer's or Seller's choice for the independent expert advice and counsel relative thereto. Buyer and Seller acknowledge that photographs, marketing materials, and digital media used in the marketing of the property may continue to remain in publication after Closing. Buyer and Seller agree that Brokers shall not be liable for any uses of photographs, marketing materials or digital media which the Broker is not in control.

11. **Brokerage.** As specified by separate agreement, Seller agrees to pay Listing Broker at Closing the agreed upon compensation. The Listing Broker will direct the closing agency to pay the Selling Broker, from the compensation received, an amount in accordance with the terms and provisions specified by separate agreement. The parties agree and acknowledge that the Brokers involved in this transaction may receive compensation from more than one party. All parties to this Agreement agree and acknowledge that any real estate firm involved in this transaction shall be deemed a third party beneficiary only for the purposes of enforcing their commission rights, and as such, shall have the right to maintain an action on this Agreement for any and all compensations due and any reasonable attorney's fees and court costs.

This form is copyrighted and may only be used in real estate transactions in which ___Melissa Harmon___ is involved as a Tennessee REALTORS® authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615-321-1477.

TENNESSEE REALTORS     Copyright 2015 © Tennessee Association of Realtors®     Version 01/01/2021
RF401 – Purchase and Sale Agreement, Page 7 of 10

AuthentIsign ID: F8D9E670-07B2-434E-B729-4B86ECF6E8D5

12. **Default.** Should Buyer default hereunder, the Earnest Money/Trust Money shall be forfeited as damages to Seller and shall be applied as a credit against Seller's damages. Seller may elect to sue, in contract or tort, for additional damages or specific performance of the Agreement, or both. Should Seller default, Buyer's Earnest Money/Trust Money shall be refunded to Buyer. In addition, Buyer may elect to sue, in contract or tort, for damages or specific performance of this Agreement, or both. In the event that any party hereto shall file suit for breach or enforcement of this Agreement (including suits filed after Closing which are based on or related to the Agreement), the prevailing party shall be entitled to recover all costs of such enforcement, including reasonable attorney's fees. In the event that any party exercises its right to terminate due to the default of the other pursuant to the terms of this Agreement, the terminating party retains the right to pursue any and all legal rights and remedies against the defaulting party following termination. The parties hereby agree that all remedies are fair and equitable and neither party will assert the lack of mutuality of remedies, rights and/or obligations as a defense in the event of a dispute.

13. **Home Protection Plan.** This is not a substitution for Home Inspection. Exclusions to coverage may apply. **(Select the appropriate box below. Items not selected are not part of this Agreement).**

    ☐ **Home Protection Plan.** _____ to pay $_____ for the purchase of a limited home protection plan to be funded at Closing. Plan Provider: _____.
    Ordered by: _____ (Real Estate Company)

    ☒ **Home Protection Plan waived.**

14. **Other Provisions.**

    A. **Binding Effect, Entire Agreement, Modification, Assignment, and Binding Agreement Date.** This Agreement shall be for the benefit of, and be binding upon, the parties hereto, their heirs, successors, legal representatives and assigns. This Agreement constitutes the sole and entire agreement between the parties hereto and no modification of this Agreement shall be binding unless signed by all parties or assigns to this Agreement. No representation, promise, or inducement not included in this Agreement shall be binding upon any party hereto. It is hereby agreed by both Buyer and Seller that any real estate agent working with or representing either party shall not have the authority to bind the Buyer, Seller or any assignee to any contractual agreement unless specifically authorized in writing within this Agreement. Any assignee shall fulfill all the terms and conditions of this Agreement. The parties hereby authorize either licensee to insert the time and date of receipt of the notice of acceptance of the final offer. The foregoing time and date will be referred to for convenience as the Binding Agreement Date for purposes of establishing performance deadlines.

    B. **Survival Clause.** Any provision contained herein, which by its nature and effect is required to be performed after Closing, shall survive the Closing and delivery of the deed and shall remain binding upon the parties to this Agreement and shall be fully enforceable thereafter.

    C. **Governing Law and Venue.** This Agreement is intended as a contract for the purchase and sale of real property and shall be governed by and interpreted in accordance with the laws and in the courts of the State of Tennessee.

    D. **Time of Essence.** Time is of the essence in this Agreement.

    E. **Terminology.** As the context may require in this Agreement: (1) the singular shall mean the plural and vice versa; (2) all pronouns shall mean and include the person, entity, firm or corporation to which they relate; (3) the masculine shall mean the feminine and vice versa; and (4) the term day(s) used throughout this Agreement shall be deemed to be calendar day(s) ending at 11:59 p.m. local time unless otherwise specified in this Agreement. Local time shall be determined by the location of Property. **In the event a performance deadline**, other than the Closing Date (as defined in Section 4 herein), Date of Possession (as defined in Section 4 herein), Completion of Repair Deadline (as defined in the Repair/Replacement Amendment), and Offer Expiration Date (as defined in Section 19 herein), occurs on a Saturday, Sunday or legal holiday, the performance deadline shall extend to the next following business day. Holidays as used herein are those days deemed federal holidays pursuant to 5 U.S.C. § 6103. In calculating any time period under this Agreement, the commencement shall be the day following the initial date (e.g. Binding Agreement Date).

    F. **Responsibility to Cooperate.** Buyer and Seller agree to timely take such actions and produce, execute, and/or deliver such information and documentation as is reasonably necessary to carry out the responsibilities and obligations of this Agreement. Except as to matters which are occasioned by clerical errors or omissions or erroneous information, the approval of the closing documents by the parties shall constitute their approval of any differences between this Agreement and the Closing. Buyer and Seller agree that if requested after Closing, they will correct any documents and pay any amounts due where such corrections or payments are appropriate by reason of mistake, clerical errors or omissions, or the result of erroneous information.

This form is copyrighted and may only be used in real estate transactions in which ___Melissa Harmon___ is involved as a Tennessee REALTORS® authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615-321-1477.

**TENNESSEE REALTORS**  Copyright 2015 © Tennessee Association of Realtors®  Version 01/01/2021
RF401 – Purchase and Sale Agreement, Page 8 of 10



AuthentisignID: F8D9E670-07B2-434E-B729-4B86ECF6E8D5

G. **Notices.** Except as otherwise provided herein, all notices and demands required or permitted hereunder shall be in writing and delivered either (1) in person; (2) by a prepaid overnight delivery service; (3) by facsimile transmission (FAX); (4) by the United States Postal Service, postage prepaid, registered or certified, return receipt requested; or (5) Email. **NOTICE** shall be deemed to have been given as of the date and time it is actually received. Receipt of notice by the real estate licensee or their Broker assisting a party as a client or customer shall be deemed to be notice to that party for all purposes under this Agreement as may be amended, unless otherwise provided in writing.

H. **Risk of Loss.** The risk of hazard or casualty loss or damage to Property shall be borne by the Seller until transfer of title. If casualty loss prior to Closing exceeds 10% of the Purchase Price, Seller or Buyer may elect to terminate this Agreement with a refund of Earnest Money/Trust Money to Buyer.

I. **Equal Housing.** This Property is being sold without regard to race, color, creed, sex, religion, handicap, familial status, or national origin.

J. **Severability.** If any portion or provision of this Agreement is held or adjudicated to be invalid or unenforceable for any reason, each such portion or provision shall be severed from the remaining portions or provisions of this Agreement, and the remaining portions or provisions shall be unaffected and remain in full force and effect. In the event that the contract fails due to the severed provisions, then the offending language shall be amended to be in conformity with state and federal law.

K. **Alternative Dispute Resolution.** In the event the parties elect to utilize Alternative Dispute Resolution, incorporate "Resolution of Disputes by Mediation Addendum/Amendment" (RF629).

L. **Contract Construction.** This Agreement or any uncertainty or ambiguity herein shall not be construed against any party but shall be construed as if all parties to this Agreement jointly prepared this Agreement.

M. **Section Headings.** The Section Headings as used herein are for reference only and shall not be deemed to vary the content of this Agreement or limit the scope of any Section.

15. **Seller's Additional Obligations.** In addition to any other disclosure required by law, the Seller shall, prior to entering into a contract with a Buyer, disclose in writing including acknowledgement of receipt: (a) the presence of any known exterior injection well or sinkhole (as defined in TCA § 66-5-212) on the property; (b) the results of any known percolation test or soil absorption rate performed on the property that is determined or accepted by the Department of Environment and Conservation; (c) if the property is located in a Planned Unit Development (PUD); (d) if the property is located in a PUD, make available to the Buyer a copy of the development's restrictive covenants, homeowner bylaws and master deed upon request; (e) any single-family residence located on the Property has been moved from an existing foundation to another foundation where such information is known to the Seller; and (f) if a permit for a subsurface sewage disposal system for the Property was issued during a sewer moratorium pursuant to TCA § 68-221-409. If so, Buyer may have a future obligation to connect to the public sewer system.

16. **Method of Execution.** The parties agree that signatures and initials transmitted by facsimile, other photocopy transmittal, or by transmittal of digital signature as defined by the applicable State or Federal law will be acceptable and may be treated as originals and that the final Purchase and Sale Agreement containing all signatures and initials may be executed partially by original signature and partially on facsimile, other photocopy documents, or by digital signature as defined by the applicable State or Federal law.

17. **Exhibits and Addenda.** All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part of this Agreement:
    see addendum to Purchase and Sale Agreement

18. **Special Stipulations.** The following Special Stipulations, if conflicting with any preceding section, shall control:

This form is copyrighted and may only be used in real estate transactions in which ___Melissa Harmon___ is involved as a Tennessee REALTORS® authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615- 321-1477.

TENNESSEE REALTORS    Copyright 2015 © Tennessee Association of Realtors®    Version 01/01/2021
RF401 – Purchase and Sale Agreement, Page 9 of 10



AuthentIsign ID: F8D9E670-07B2-434E-B729-4B86ECF6E8D5

480  **19. Time Limit of Offer.** This Offer may be withdrawn at any time before acceptance with Notice. Offer terminates if not
481  countered or accepted by ____10____ o'clock ☒ a.m./ ☐ p.m.; on the __26th__ day of ____September____, __2021__.

482  **LEGAL DOCUMENTS:** This is an important legal document creating valuable rights and obligations. If you have any
483  questions about it, you should review it with your attorney. Neither the Broker nor any Agent or Facilitator is
484  authorized or qualified to give you any advice about the advisability or legal effect of its provisions.

485  **NOTE:** Any provisions of this Agreement which are preceded by a box "☐" must be marked to be a part of this
486  Agreement. By affixing your signature below, you also acknowledge that you have reviewed each page and have
487  received a copy of this Agreement.

488  **WIRE FRAUD WARNING:** Never trust wiring instructions sent via email. Cyber criminals are hacking email accounts
489  and sending emails with fake wiring instructions. These emails are convincing and sophisticated. Always independently
490  confirm wiring instructions in person or via a telephone call to a trusted and verified phone number. Never wire money
491  without double-checking that the wiring instructions are correct. **NEVER ACCEPT WIRING INSTRUCTIONS FROM**
492  **YOUR AGENT OR BROKER.** __WM__ Buyer Initials __TRB__ Buyer Initials

493  Buyer hereby makes this offer.

494  /s/ KM  /s/ Tracy R Bell
495  **BUYER** 9/24/2021 8:31:21 AM CDT   **BUYER** 9/24/2021 8:18:08 AM CDT

496  _____ at _____ o'clock ☐ am/ ☐ pm    _____ at _____ o'clock ☐ am/ ☐ pm
497  **Offer Date**    **Offer Date**

498  Seller hereby:
499  ☒ ACCEPTS — accepts this offer.
500  ☐ COUNTERS — accepts this offer subject to the attached Counter Offer(s).
501  ☐ REJECTS this offer and makes no counter offer.
502  /s/ Miguel F Martin
503  **SELLER** Miguel F Martin 9/24/2020 11:43:14 AM CDT   **SELLER**

504  _____ at _____ o'clock ☐ am/ ☐ pm    _____ at _____ o'clock ☐ am/ ☐ pm
505  **Date**    **Date**

506  **Acknowledgement of Receipt.** _____ hereby acknowledges receipt of the final accepted offer
507  on _____ at _____ o'clock ☐ am/ ☐ pm, and this shall be referred to as the Binding Agreement Date for
508  purposes of establishing performance deadlines as set forth in the Agreement.

**For Information Purposes Only:**

Listing Company: __Re/Max Finest__   Selling Company: _____
Listing Firm Address: __24 Oak Road__   Selling Firm Address: _____
Firm License No.: __773524343__   Firm License No.: _____
Firm Telephone No.: __931-484-4003__   Firm Telephone No.: _____
Listing Licensee: __Melissa Harmon__   Selling Licensee: _____
Licensee License Number: __341941__   Licensee License Number: _____
Licensee Email: __Melissa.Harmon1@remax.net__   Licensee Email: _____
Licensee Cellphone No.: _____   Licensee Cellphone No.: _____
Home Owner's / Condominium Association ("HOA/COA")/ Property Management Company:

Phone: _____   Email: _____

*NOTE: This form is provided by Tennessee REALTORS® to its members for their use in real estate transactions and is to be used as is. By downloading and/or using this form, you agree and covenant not to alter, amend, or edit said form or its contents except as where provided in the blank fields, and agree and acknowledge that any such alteration, amendment or edit of said form is done at your own risk. Use of the Tennessee REALTORS® logo in conjunction with any form other than standardized forms created by Tennessee REALTORS® is strictly prohibited. This form is subject to periodic revision and it is the responsibility of the member to use the most recent available form.*

This form is copyrighted and may only be used in real estate transactions in which __Melissa Harmon__ is involved as a Tennessee REALTORS® authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615-321-1477.

AuthentIsign ID: F8D9E670-07B2-434E-B729-4B86ECF6E8D5



# NOTIFICATION OF
# CHANGE IN STATUS OR AGENCY RELATIONSHIP

1  Every real estate licensee is required to disclose his or her agency status in a real estate transaction to any buyer or
2  seller who is not represented by an agent and with whom the licensee is working directly in the transaction. Copies of
3  this confirmation must be provided to any signatory thereof. If the licensee's agency relationship changes at any time
4  during the course of a real estate transaction, that agent is required to immediately notify any other licensees and any
5  parties to the transaction of this change in agency relationship. The following serves as a written confirmation of any
6  change in status or agency relationship by this Licensee (or Licensee's real estate company):

7  The real estate transaction involving the property located at:
8  __998   Hickory Nut Trl_____ __TN_____ ("Property Address")
9  and involving the following parties: ____Miguel F Martin_____ ("Seller" which
10 includes landlord as applicable) and/or _____Kenneth Bell_____ & _____Tracy R Bell_____ ("Buyer"
11 which includes tenant as applicable).

12 I. **PREVIOUS STATUS OR AGENCY RELATIONSHIP:**
13 _____Melissa Harmon_____ ("Licensee" or Firm as applicable) was previously acting in the
14 following capacity in this transaction:
15 Licensee to select the Status or Agency Relationship previously disclosed by Licensee or Firm as applicable on the
16 original Confirmation of Agency Status Form or immediately preceding Notification of Change in Status or Agency
17 Relationship:

18  ☐ Agent for the Seller                    ☐ Agent for the Buyer
19  ☐ Designated Agent for the Seller         ☐ Designated Agent for the Buyer
20  ☒ Transaction Broker or Facilitator       ☐ Disclosed Dual Agent (for both parties)
21    (not an agent for either party)            with the consent of both the Buyer and the Seller

22 II. **CHANGE TO STATUS OR AGENCY RELATIONSHIP:**
23 _____Melissa Harmon_____ ("Licensee" or Firm as applicable) with
24 _____ReMax Finest_____ ("Firm") has changed his/her status or agency relationship
25 in this transaction to the following:
26 Licensee to select ONE of the following options to describe his/her or Firm's New Status or Agency Relationship in
27 this Transaction:

28  ☐ Agent for the Seller                    ☐ Agent for the Buyer
29  ☐ Designated Agent for the Seller         ☐ Designated Agent for the Buyer
30  ☒ Transaction Broker or Facilitator       ☐ Disclosed Dual Agent (for both parties)
31    (not an agent for either party)            with the consent of both the Buyer and the Seller

32 This form is intended to notify a buyer, seller, and/or any other licensee in transaction of a change in status or agency
33 relationship of a real estate agent.  This document also serves as confirmation that the licensee's Agency or Transaction
34 Broker status was communicated orally before any real estate services were provided and also serves as a statement
35 acknowledging that the buyer or seller, as applicable, was informed that any complaints alleging a violation or violations of
36 Tenn. Code Ann. § 62-13-312 must be filed within the applicable statute of limitations for such violation set out in Tenn. Code
37 Ann. § 62-13-313(e) with the Tennessee Real Estate Commission, 500 James Robertson Parkway, Nashville, TN 37243, PH:
38 (615) 741-2273.  This notice by itself, however, does not constitute an agency agreement or establish any agency
39 relationship.

This form is copyrighted and may only be used in real estate transactions in which __Melissa Harmon__ is involved as a Tennessee REALTORS® authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615- 321-1477.

TENNESSEE REALTORS   Copyright 2013 © Tennessee Association of Realtors®   Version 01/01/2021
RF303 – Notification of Change in Status or Agency Relationship, Page 1 of 2



AuthentIsign ID: F8D9E670-07B2-434E-B729-4B86ECF6E8D5

40  The following signatures constitute acknowledgment of receipt of this Notification of Change in Status or Agency Relationship
41  disclosure by the Realtor® acting as Agent/Broker OR other status of Seller/Landlord and/or Buyer/Tenant listed above pursuant
42  to the National Association of Realtors® Code of Ethics and Standards of Practice.

43  _____*Miguel F Martin*_____    _____*KM*_____
44  Seller Signature  9/24/2021 9:43:18 AM CDT   Date    Buyer Signature                         Date

45  _____    _____*Tracy R Bell*_____
46  Seller Signature                         Date    Buyer Signature  9/24/2021 9:24 AM CDT      Date

47  _____    _____*Melissa Harmon*_____
48  Listing Licensee  Melissa Harmon         Date    Selling Licensee                          Date

49  _____    _____
50  Listing Company                          Date    Selling Company                           Date

*NOTE: This form is provided by Tennessee REALTORS® to its members for their use in real estate transactions and is to be used as is. By downloading and/or using this form, you agree and covenant not to alter, amend, or edit said form or its contents except as where provided in the blank fields, and agree and acknowledge that any such alteration, amendment or edit of said form is done at your own risk. Use of the Tennessee REALTORS® logo in conjunction with any form other than standardized forms created by Tennessee REALTORS® is strictly prohibited. This form is subject to periodic revision and it is the responsibility of the member to use the most recent available form.*

This form is copyrighted and may only be used in real estate transactions in which __Melissa Harmon__ is involved as a Tennessee REALTORS® authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615-321-1477.

 TENNESSEE REALTORS®    Copyright 2013 © Tennessee Association of Realtors®    Version 01/01/2021
RF303 – Notification of Change in Status or Agency Relationship, Page 2 of 2

TRANSACTIONS
TransactionDesk Edition

AuthentIsign ID: F8D9E670-07B2-434E-B729-4B86ECF6E8D5



# WORKING WITH A REAL ESTATE PROFESSIONAL

Pursuant to the Tennessee Real Estate Broker License Act, every Real Estate Licensee owes the following duties to every Buyer and Seller, Tenant and Landlord (collectively "Buyers" and "Sellers"):

1. To diligently exercise reasonable skill and care in providing services to all parties to the transaction;

2. To disclose to each party to the transaction any Adverse Facts of which Licensee has actual notice or knowledge;

3. To maintain for each party in a transaction the confidentiality of any information obtained by a Licensee prior to disclosure to all parties of a written agency agreement entered into by the Licensee to represent either or both parties in the transaction. This duty of confidentiality extends to any information which the party would reasonably expect to be held in confidence, except for any information required by law to be disclosed. This duty survives both the subsequent establishment of an agency relationship and the closing of the transaction;

4. To provide services to each party to the transaction with honesty and good faith;

5. To disclose to each party to the transaction timely and accurate information regarding market conditions that might affect such transaction only when such information is available through public records and when such information is requested by a party;

6. To give timely account for earnest money deposits and all other property received from any party to a transaction; and

7. A) To refrain from engaging in self-dealing or acting on behalf of Licensee's immediate family, or on behalf of any other individual, organization or business entity in which Licensee has a personal interest without prior disclosure of such personal interest and the timely written consent of all parties to the transaction; and

    B) To refrain from recommending to any party to the transaction the use of services of another individual, organization or business entity in which the Licensee has an interest or from whom the Licensee may receive a referral fee or other compensation for the referral, other than referrals to other Licensees to provide real estate services, without timely disclosure to the party who receives the referral, the Licensee's interest in such a referral or the fact that a referral fee may be received.

**In addition to the above, the Licensee has the following duties to his/her Client if the Licensee has become an Agent or Designated Agent in a transaction:**

8. Obey all lawful instructions of the client when such instructions are within the scope of the agency agreement between the Licensee and Licensee's client;

9. Be loyal to the interests of the client. Licensee must place the interests of the client before all others in negotiation of a transaction and in other activities, except where such loyalty/duty would violate Licensee's duties to a customer in the transaction; and

10. Unless the following duties are specifically and individually waived in writing by a client, Licensee shall assist the client by:

    A) Scheduling all property showings on behalf of the client;

    B) Receiving all offers and counter offers and forwarding them promptly to the client;

    C) Answering any questions that the client may have in negotiation of a successful purchase agreement within the scope of the Licensee's expertise; and

    D) Advising the client as to whatever forms, procedures and steps are needed after execution of the purchase agreement for a successful closing of the transaction.

    Upon waiver of any of the above duties contained in 10. above, a consumer must be advised in writing by such consumer's agent that the consumer may not expect or seek assistance from any other licensees in the transaction for the performance of said duties.

This form is copyrighted and may only be used in real estate transactions in which __Melissa Harmon__ is involved as a Tennessee REALTORS® authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615- 321-1477.

TENNESSEE REALTORS    Copyright 2015 © Tennessee Association of Realtors®    Version 01/01/2021
RF301 – Working with a Real Estate Professional, Page 1 of 2



41  **Responsibilities of Sellers and Buyers regarding presence of Recording Devices:**
42  Seller is responsible for compliance with state or federal law regarding usage of video or audio recording devices
43  while marketing or showing the property. Seller should seek legal advice regarding their rights or limitations related
44  to their actions.

45  Buyer is advised of the possibility that some properties may utilize security devices that record physical movements
46  or audio conversations. Therefore, Buyers should limit making comments concerning the value, features, or condition
47  while viewing any property.

## AN EXPLANATION OF TERMS

48  **Facilitator/Transaction Broker (not an agent for either party).** The Licensee is not working as an agent for either party in
49  this consumer's prospective transaction. A Facilitator may advise either or both of the parties to a transaction but cannot be
50  considered a representative or advocate of either party. "Transaction Broker" may be used synonymously with, or in lieu of,
51  "Facilitator" as used in any disclosures, forms or agreements. [By law, any licensee or company who has not entered into a
52  written agency agreement with either party in the transaction is considered a Facilitator or Transaction Broker until such time
53  as an agency agreement is established.]

54  **Agent for the Seller.** The Licensee's company is working as an agent for the property seller and owes primary loyalty to the
55  seller. Even if the Licensee is working with a prospective buyer to locate property for sale, rent, or lease, the Licensee and
56  his/her company are legally bound to work in the best interests of any property owners whose property is shown to this
57  prospective buyer. An agency relationship of this type cannot, by law, be established without a written agency agreement.

58  **Agent for the Buyer.** The Licensee's company is working as an agent for the prospective buyer, owes primary loyalty to the
59  buyer, and will work as an advocate for the best interests of the buyer. An agency relationship of this type cannot, by law, be
60  established without a written buyer agency agreement.

61  **Disclosed Dual Agent (for both parties).** Refers to a situation in which the Licensee has agreements to provide services as
62  an agent to more than one party in a specific transaction and in which the interests of such parties are adverse. This agency
63  status may only be employed upon full disclosure to each party and with each party's informed consent.

64  **Designated Agent for the Seller.** The individual Licensee that has been assigned by his/her Managing Broker and is working
65  as an agent for the Seller or property owner in this consumer's prospective transaction, to the exclusion of all other licensees
66  in his/her company. Even if someone else in the Licensee's company represents a possible buyer for this Seller's property, the
67  Designated Agent for the Seller will continue to work as an advocate for the best interests of the Seller or property owner. An
68  agency relationship of this type cannot, by law, be established without a written agency agreement.

69  **Designated Agent for the Buyer.** The individual Licensee that has been assigned by his/her Managing Broker and is working
70  as an agent for the Buyer in this consumer's prospective transaction, to the exclusion of all other licensees in his/her company.
71  Even if someone else in the Licensee's company represents a seller in whose property the Buyer is interested, the Designated
72  Agent for the Buyer will continue to work as an advocate for the best interests of the Buyer. An agency relationship of this
73  type cannot, by law, be established without a written agency agreement.

74  **Adverse Facts.** "Adverse Facts" means conditions or occurrences generally recognized by competent licensees that have a
75  negative impact on the value of the real estate, significantly reduce the structural integrity of improvements to real property or
76  present a significant health risk to occupants of the property.

77  **Confidentiality.** By law, every licensee is obligated to protect some information as confidential. This includes any information
78  revealed by a consumer which may be helpful to the other party IF it was revealed by the consumer BEFORE the Licensee
79  disclosed an agency relationship with that other party. AFTER the Licensee discloses that he/she has an agency relationship
80  with another party, any such information which the consumer THEN reveals must be passed on by the Licensee to that other
81  party.

82  [AuthentiSign: *HU*]                [AuthentiSign: *Tracy R Bell*]              [AuthentiSign: *Miguel J Martin*]
83  9/24/2021 7:31:36 AM CDT ☐ BUYER / ☑ SELLER   9/24/2021 8:18:18 AM CDT Date   ☐ BUYER / ☑ SELLER 9/24/2021 1:54:14 AM PDT         Date

84                 [AuthentiSign: *Melissa Harmon*]                                   ReMax Finest
85  Real Estate Licensee 9/24/2021 10:19:22 PM CDT      Date       Real Estate Company                           Date

*NOTE: This form is provided by Tennessee REALTORS® to its members for their use in real estate transactions and is to be used as is. By downloading and/or using this form, you agree and covenant not to alter, amend, or edit said form or its contents except as where provided in the blank fields, and agree and acknowledge that any such alteration, amendment or edit of said form is done at your own risk. Use of the Tennessee REALTORS® logo in conjunction with any form other than standardized forms created by Tennessee REALTORS® is strictly prohibited. This form is subject to periodic revision and it is the responsibility of the member to use the most recent available form.*

This form is copyrighted and may only be used in real estate transactions in which **Melissa Harmon** is involved as a Tennessee REALTORS® authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615-321-1477.



TENNESSEE REALTORS   Copyright 2015 © Tennessee Association of Realtors®                                 Version 01/01/2021
RF301 – Working with a Real Estate Professional, Page 2 of 2

TRANSACTIONS
TransactionDesk Edition